UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LOVE AND MADNESS, INC.,

               Plaintiff,

-v-

CLAIRE'S HOLDINGS, LLC, ET AL.,

               Defendants.

CIVIL ACTION NO.: 21 Civ. 1913 (AT) (SLC)

**OPINION AND ORDER**

**SARAH L. CAVE**, United States Magistrate Judge.

## I. INTRODUCTION

Before the Court is a motion by Doniger / Burroughs ("Doniger"), new counsel for Plaintiff Love and Madness, Inc. ("L&M"), for emergency relief directing Barton LLP ("Barton"), L&M's former counsel, to turn over its client file for L&M and substituting Doniger as L&M's counsel in this action. (ECF No. 63 (the "Doniger Motion")). In response, Barton seeks to require L&M to either pay over $100,000 in outstanding attorneys' fees and costs or to post a bond, which the Court construes as a motion to fix a retaining lien under New York Judiciary Law § 475. (ECF No. 64 (the "Barton Motion"), together with the Doniger Motion, the "Motions")). For the reasons set forth below, the Barton Motion is DENIED, and the Doniger Motion is GRANTED. Doniger is substituted as counsel for L&M in this action, and Barton is directed to deliver its L&M client file to Doniger **by no later than October 8, 2021**.

## II. BACKGROUND

L&M "has used, marketed, and sold products with its distinctive design configurations in commerce using the 'Love and Madness' trademark throughout the United States beginning in

1

2014 and continuously thereafter through 2019." (ECF No. 44 ¶ 20). L&M's products include "face gems" and "body stickers," which have an adhesive backing that allows consumers to apply them to their bodies. (Id. ¶¶ 21, 71). L&M has applied for and received copyright registrations for several of its designs. (Id. ¶¶ 23–76).

L&M asserts against Defendants Claire's Holdings LLC, CBI Distributing Corp d/b/a "Claire's", "Icing," "Claire's Accessories," and "Icing By Claire's," Claire's Accessories UK Ltd., and Claire's Stores Inc. (together, "Claire's") claims for copyright infringement under the Copyright Act, 17 U.S.C. § 101 et seq., unfair business practices in violation of New York General Business Law § 349, and unjust enrichment. (ECF Nos. 1, 44). L&M alleges that, from 2015 to 2019, Claire's "ordered millions of dollars of products" from L&M for sale in Claire's stores, but since at least 2018, Claire's has been intentionally copying L&M's copyrighted designs without permission or license, from which Claire's has generated millions of dollars in profits. (ECF No. 44 ¶¶ 90–97). L&M seeks declaratory and injunctive relief, copyright damages of at least $65 million, an accounting, and costs and attorneys' fees pursuant to 17 U.S.C. § 505. (Id. at 40–41).

According to an Engagement Letter dated February 7, 2020,[1] Barton began representing L&M for intellectual property as well as other matters, with the principal attorneys designated as Laura-Michelle Hogan ("Hogan") and Maurice Ross ("Ross"). (ECF No. 89; See ECF No. 84 ¶ 3). In the Engagement Letter, Hogan and Ross both agreed to reduce their hourly rate to $400 and $550, respectively. (ECF No. 89 at 2). On August 9, 2021, Doniger informed Barton that L&M had decided to transfer the representation to Doniger, provided Barton a substitution of counsel form to execute and return, and requested that Barton deliver L&M's client file. (ECF No. 63). Barton

---

[1] Barton submitted the Engagement Letter under seal. (ECF No. 91).

2

declined to do so, citing L&M's unpaid attorneys' fees and costs totaling $104,641.58 (the "Fees"), and stated that it would not deliver L&M's client file until L&M paid the Fees. (ECF Nos. 63–64).

On August 18, 2021, Doniger filed its Motion, asserting that L&M discharged Barton "for cause" based on "improper bill[ing]" and its "fail[ure] to procure certificates of registration from the U.S. Copyright Office." (ECF No. 63). Doniger asked to be substituted as L&M's counsel in this action and for an order directing Barton to turn over L&M's client file. (Id.)

Barton promptly responded with its Motion, disputing that L&M discharged it "for cause," and requesting that L&M be ordered to "post a bond to ensure payment of its legal fees before [Doniger] is substituted as counsel." (ECF No. 64).

On September 10, 2021, the Court heard argument on the Motions. (ECF No. 78 (the "Hearing")). After hearing the parties' arguments, the Court ruled that L&M had not met its burden to show that it had discharged Barton "for [] cause," and therefore, they had "a valid right to retain [L&M's] files." (Id. at 15:12–20). The Court then "strongly encourage[d]" the parties to explore whether they could agree on "some kind of a payment schedule that [would not] overly compromise" the amount of fees Barton believed L&M owed but would "stop[] the litigation [from] being held hostage." (Id. at 17:4–11). If the parties were unable to reach agreement, the Court permitted the parties to make supplemental submissions; for Doniger, that needed to include an affidavit from L&M and supporting documentation, and for Barton, that needed to include billing records supporting the Fees. (Id. at 17:11–21)

Much to the disappointment of their client—whose dispute is being delayed—and the Court—whose resources must now be diverted to resolve an unseemly dispute between

attorneys who seem to be putting their own interests before that of their client—Barton and Doniger did not come to an agreement. On September 24, 2021, Barton filed a letter explaining why it believed the amount of the Fees was reasonable and reiterating its request that L&M be required to post a bond before Barton would turn over the client file. (ECF No. 81).[2] For its part, Doniger filed a letter quantifying the amount of fees that L&M had already paid Barton, accusing Barton of "facially excessive billing," and asking the Court to deny Barton's request for a retaining lien. (ECF Nos. 83, 85). Doniger also submitted a declaration from Heather McAvoy, Chief Executive Officer of L&M, explaining that a medical condition since 2018 has prevented her from working, quantifying the amount of fees she has paid Barton in this action and an unrelated Social Security matter, and attesting to the sum of her liquid assets. (ECF No. 84).

### III. DISCUSSION

#### A. Legal Standards

A federal court "'may, in its discretion, exercise ancillary jurisdiction to hear fee disputes . . . between litigants and their attorneys when the dispute relates to the main action . . . .'" Chesley v. Union Carbide Corp., 927 F.2d 60, 64 (2d Cir. 1991) (quoting Cluett, Peabody & Co. v. CPC Acquisition Co., 863 F.2d 251, 256 (2d Cir. 1988)); see 28 U.S.C. § 1367. In a suit such based on a federal statute with a fee-shifting provision, "the matter of attorney's fees becomes part of an inextricable whole." Misek-Falkoff v. Int'l Bus. Mach. Corp., 829 F. Supp. 660, 663 (S.D.N.Y. 1993). Where a fee-shifting provision exists in the federal statute, "retention of files should rarely if ever be permitted." Id. at 664.

---

[2] Barton refiled its letter on September 29, 2021 due to an ECF error. (ECF Nos. 81, 92).

This case does involve a fee-shifting statute. (ECF No. 78 at 6:16-22). The fee-shifting provision of the Copyright Act provides that "[i]n any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof," along with "a reasonable attorney's fee to the prevailing party . . ." 17 U.S.C. § 505; see Miroglio S.P.A. v. Conway Stores, Inc., 629 F. Supp. 2d 307, 310 (S.D.N.Y. 2009) (discussing courts' discretion to award attorneys' fees and costs under Copyright Act).

Under New York law, a withdrawing attorney has "a charging lien against any recovery or settlement if the fee has not yet been paid for his [or her] services and disbursements . . . unless the magistrate judge decides that the attorney withdrew without good and sufficient cause . . ." Misek-Falkoff, 829 F. Supp. at 663. New York Judiciary Law § 475 provides:

> From the commencement of an action, special or other proceeding in any court or before any state, municipal or federal department, except a department of labor, or the service of an answer containing a counterclaim . . . the attorney who appears for a party has a lien upon his or her client's cause of action, claim or counterclaim, which attaches to a verdict, report, determination, decision, award, settlement, judgment or final order in his or her client's favor, and the proceeds thereof in whatever hands they may come; and the lien cannot be affected by any settlement between the parties before or after judgment, final order or determination. The court upon the petition of the client or attorney may determine and enforce the lien.

N.Y. Judiciary L. § 475. "[A]n attorney need not be counsel of record at the time a plaintiff receives judgment or settlement proceeds in order to have a lien on those proceeds, so long as the attorney was counsel of record at one point in the proceedings." Petition of Harley & Browne, 957 F. Supp. 44, 48 (S.D.N.Y. 1997). "[A]n attorney loses his right to enforce a charging lien if the attorney withdraws or is discharged for cause." Id. "A hearing is required to determine if [an attorney] was discharged for cause, and, if not, the amount of his fee on a quantum meruit basis." Mason v. City of New York, 67 A.D.3d 475, 475–76 (1st Dep't 2009). "[I]n the normal case," courts

"defer determination of the fees and disbursements due the [withdrawing] attorney until the resolution of the main case to avoid injecting side issues . . ." Misek-Falkoff, 829 F. Supp. at 663 (citing Gale v. Stallone, No. 91 Civ. 3467 (JFK), 1992 WL 73476 (S.D.N.Y. Apr. 2, 1992)).

New York common law also "entitles an attorney who has rendered services or made disbursements on behalf of a client to retain, as security for payment, the client's papers and funds which are in the attorney's possession." Misek-Falkoff, 829 F. Supp. at 663; see Resol. Trust Corp. v. Elman, 949 F.2d 624, 626 (2d Cir. 1991) ("Under New York law, a retaining lien entitles an attorney to keep, as security against payment of fees, all client papers and property, including money, that come into the attorney's possession in the course of employment, unless the attorney is discharged for good cause."); Rivkin v. A.J. Hollander & Co., No. No. 95 Civ. 9314 (DAB) (AJP), 1996 WL 633217, at *2 (S.D.N.Y. Nov. 1, 1996) (collecting cases that explain that New York recognizes "a distinct common law 'retaining lien' that allows withdrawing counsel to retain pleadings and other documents in counsel's possession until counsel is paid for his or her work"); People v. Keeffe, 50 N.Y.2d 149, 155–56 (1985) (describing attorneys' retaining and charging liens under New York law). A court may "order the transfer of case files without payment or a bond" if "special circumstances" exist. Misek-Falkoff, 829 F. Supp. at 663; see Jenkins v. Weinshienk, 670 F.2d 915, 919–20 (10th Cir. 1982) (discussing exceptions to retaining lien under New York law). "An exception to the attorney's right to a retaining lien may be found, in the court's discretion, where the client has made a clear showing of: (1) a need for the documents, (2) prejudice that would result from the denial of access to the papers, and (3) inability to pay the legal fees or post a reasonable bond." Shoe Show, Inc. v. Launzel, No. 92-CV-2794 (ILG), 1993 WL 150322, at *1 (E.D.N.Y. May 3, 1993); see Rivkin, 1996 WL 633217, at *3–4 (collecting cases

6

discussing exceptions to retaining lien). Ultimately, the court must "determine whether assertion of a retaining lien is 'in such conflict with important principles that it must be relinquished when balanced against considerations of public policy.'" Misek-Falkoff, 829 F. Supp. at 664 (quoting Jenkins, 670 F.2d at 919)).

In addition, the Court is ever-mindful of the command that it must construe, administer, and employ the Federal Rules of Civil Procedure "to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1.

### B. Application

#### 1. "For cause"

As noted above, a discharged attorney may not assert a charging or retaining lien against a client if the client discharged the attorney "for cause." Antonmarchi v. Consol. Edison Co. of N.Y., 678 F. Supp. 2d 235, 241 (S.D.N.Y. 2010); Casper v. Lew Lieberbaum & Co., No. 97 Civ. 3016 (JGK) (RLE), 1999 WL 335334, at *8 (S.D.N.Y. May 26, 1999); Campagnola v. Mulholland, Minion & Roe, 76 N.Y.2d 38, 44 (1990) ("Where the discharge is for cause, the attorney has no right to compensation or a retaining lien, notwithstanding a specific retainer agreement."). "Courts typically find a discharge 'for cause' where there has been a significant breach of legal duty." Allstate Ins. Co. v. Nandi, 258 F. Supp. 2d 309, 312 (S.D.N.Y. 2003). The client must show that her former counsel's conduct "constituted a failure to properly represent [her] interests." Costello v. Kiaer, 278 A.D.2d 50, 50 (1st Dep't 2000). New York courts are generally consistent in find that an attorney has been dismissed "for cause" when one or more of the following were present:

> (1) the attorney's failure to perform under the employment contract; (2) his lack of diligence in so performing; (3) his lack of ordinary skill or care in so performing; (4) his making of demands on the client which violate the terms or exceed the scope of the contract; (5) his taking of actions contrary to the client's interests or

objective; (6) his indulging in some sort of unprofessional conduct while handling the client's affairs; (7) his venting of personal or economic hostility toward the client; and (8) his loss of the client's trust and confidence.

Chen v. LJC Trading N.Y., Inc., No. 19 Civ. 3276 (SJF) (AKT), 2020 WL 10574176, at *5–6 (E.D.N.Y. Nov. 20, 2020) (quoting Holcombe v. US Airways Grp., Inc., No. 08-CV-1593 (SLT) (JO), 2017 WL 10084142, at *10–11 (E.D.N.Y. Aug. 4, 2017)).

The Court declines to revise its ruling at the Hearing that L&M did not meet its burden to show that it had discharged Barton "for [] cause," such that, as an initial matter, Barton had "a valid right to retain [L&M's] files." (ECF No. 78 at 15:12–20). In her Declaration, McAvoy does not provide any reason for discharging Barton as her counsel in this action. (See ECF No. 84). Her new counsel, Doniger, describes several examples of "facially excessive billing" by Barton, (ECF No. 83 at 2), which, Doniger contends, "may have been misconduct that would amount to cause for termination." (ECF No. 63 at 2). But even if a fee reduction might be appropriate—if and when the Court performs an analysis of attorneys' fees in this action (see § III.B.3, infra)—that determination does not equate to the conclusion that Barton "violated any legally or professionally imposed duty" Barton owed to L&M. Allstate, 258 F. Supp. 2d at 312. Because L&M did not discharge Barton "for cause," Barton has the right to assert a charging or retaining lien.

### 2. Retaining lien

Although Barton was not discharged for cause, the Court nevertheless finds that L&M has demonstrated that a retaining lien is not appropriate in this action. It is undisputed that Doniger needs L&M's client file and that L&M will be prejudiced by the delay in this litigation if Barton continues to retain the file. (ECF Nos. 63; 64; 81; 92). With evidence of its (and McAvoy's)

minimal liquid assets, L&M has made at least a preliminary showing of inability to post a bond or pay the Fees. (ECF No. 84). In addition, as noted above, the fee-shifting provision in the Copyright Act renders this case similar to those in which courts have also found a retaining lien unnecessary and inappropriate. See Holcombre v. U.S. Airways Grp., Inc., Nos. 03-CV-4785 & 08-CV-1593 (SLT) (JMA), 2014 WL 4907141, at *4–5 (E.D.N.Y. Sept. 30, 2014) (following the "general rule against awarding retaining liens in matters [that] involve fee-shifting statutes); Casper, 1999 WL 335334, at *9 (denying retaining lien where fee-shifting statute "provide[d] protection for the attorney"); Misek-Falkoff, 829 F. Supp. at 663 (same). The concerns about ultimate payment of fees that courts have expressed in non-fee-shifting cases are thus absent here. Cf. Rivkin, 1996 WL 633217, at *4–5 (granting retaining lien where "defense counsel does not have [] protection" of fee-shifting statute). Because authorizing Barton to assert a retaining lien "would entail undue delay of the litigation" that "would prolong the adjudication of the merits" of L&M's copyright claims, the Court denies Barton's request for a retaining lien, and Barton must deliver L&M's client file to Doniger. Misek-Falkoff, 829 F. Supp. at 663.

### 3. Charging lien

Barton has not specifically requested that the Court fix the amount of a charging lien, but has submitted billing records for its representation of L&M. (See ECF Nos. 64; 81; 92). In any event, determining the amount of a charging lien on a quantum meruit basis would require the Court to consider several factors:

> (1) 'the difficulty of the matter'; (2) 'the nature and extent of the services rendered'; (3) 'the time reasonably expended on those services'; (4) 'the quality of performance by counsel'; (5) 'the qualifications of counsel'; (6) 'the amount at issue'; and (7) 'the results obtained (to the extent known).'

9

Antonmarchi, 678 F. Supp. 2d at 242 (quoting Sequa Corp. v. GBJ Corp., 156 F.3d 136, 148 (2d Cir. 1998)).  The Court exercises its discretion to postpone the determination of the amount of any charging lien until a later stage of this litigation.  See Universal Acupuncture Pain Servs., P.C. v. Quadrino & Schwartz, P.C., 370 F.3d 259, 264 (2d Cir. 2004) (explaining that a district court does not "abuse[] its discretion by postponing the determination of the fair and reasonable value of an attorney's services [] in order to avoid unnecessary delay in the underlying litigation"); Holcombre, 2014 WL 4907141, at *4 (deferring determination of amount of charging lien until "after the conclusion of the underlying litigation"); Haggar Int'l Corp. v. United Co. for Food Indus. Corp., No. 03-CV-5789 (CLP), 2013 WL 3356953, at *4 (E.D.N.Y. July 3, 2013) (denying motion to fix charging lien without prejudice to refile after damages were determined).  Although Barton has submitted billing records, it has not submitted supporting attorney declarations or other evidence of the attorneys' qualifications, among other information the Court would need to evaluate fully the factors listed above.  In addition, the billing records Barton has submitted raise a number of questions about the nature and quantity of the hours expended.  (See ECF Nos. 83; 90).  And, L&M has raised doubts about its ability to pay the Fees.  (ECF No. 84).  Given the gaps in the record on the Motions, and the uncertainty "regarding the reasonable value of the legal services provided" by Barton, "the Court is unable to compute the amount of the charging lien at this juncture[,]" and exercises its discretion to defer that determination until a later stage this litigation.  Antonmarchi, 678 F. Supp. 2d at 242.

    **4. Bond**

Congress' inclusion of a fee-shifting provision in the Copyright Act demonstrates its intent that the Act "be for the benefit of the public as well as that of the plaintiffs; the plaintiffs function

as private attorneys general." Misek-Falkoff, 829 F. Supp. at 664. The Fees that Barton is seeking, at least preliminarily, appear to be far more than L&M is able to pay. (Compare ECF No. 64 with ECF No. 84). L&M has submitted only one exhibit concerning its financial situation, however, and determining the requisite amount of a bond "would necessitate a separate independent inquiry into the financial solvency of [L&M] and generate side litigation." Misek-Falkoff, 829 F. Supp. at 664. Here, as in Misek-Falkoff, "[t]he fundamental purposes of legislation passed by Congress should not be derailed because a party can or cannot post a bond in connection with transfer of litigation files." Id. Nor should this dispute "between parties and their attorneys [] hold federal litigation hostage." Id. Given the fee-shifting provision in the Copyright Act, there exists already "a potential source of fees to prevailing counsel; in return counsel may not obstruct the course of the litigation." Id. Accordingly, the Court declines to order L&M to post a bond.

## IV. CONCLUSION

For the reasons set forth above, Barton's Motion is DENIED, and Doniger's Motion is GRANTED. No later than **October 8, 2021**, Barton shall deliver its client file to Doniger.

The Clerk of Court is respectfully directed to substitute Doniger as counsel for Plaintiff and close ECF No. 64.

Dated: New York, New York
October 4, 2021

SO ORDERED.

*Sarah L. Cave*
SARAH L. CAVE
United States Magistrate Judge