UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LOVE AND MADNESS, INC.,

                                    Plaintiff,

        -v-

CLAIRE'S HOLDINGS, LLC, <u>et</u> <u>al.</u>,

                                    Defendants.

CIVIL ACTION NO.: 21 Civ. 1913 (SLC)

<u>**OPINION AND ORDER**</u>

**SARAH L. CAVE**, United States Magistrate Judge.

## I.  <u>INTRODUCTION</u>

After multiple settlement conferences with the Court, Plaintiff Love and Madness, Inc. ("L&M") and Defendant Claire's[1] reached a settlement resolving this copyright action (the "Settlement").  The parties consented to Magistrate Judge jurisdiction, and now ask the Court to approve their settlement agreement and enter final judgment.  (ECF No. 131 (the "Settlement Motion")).  Barton LLP ("Barton"), former counsel for L&M, previously asserted a charging lien against L&M's recovery in this action, (<u>see</u> <u>generally</u> ECF Nos. 81; 92; 133 ¶ 4), and has now renewed its motion for a charging lien against the funds that L&M is to receive as part of the Settlement.  (ECF No. 136 (the "Fee Motion", with the Settlement Motion, the "Motions")).  For the reasons set forth below, the Settlement Motion is GRANTED, and the Fee Motion is GRANTED IN PART and DENIED IN PART.

---

[1] Claire's refers collectively to Claire's Holdings LLC, Claire's Inc., CBI Distributing Corp. d/b/a "Claire's", "Icing", "Claire's Accessories", and "Icing by Claire's," Claire's Accessories UK Ltd., and Claire's Stores Inc. (<u>See</u> ECF No. 1 at 1).

## II. <u>BACKGROUND</u>

The factual and procedural background of this action is set forth in the Court's Opinion and Order dated October 4, 2021, and is incorporated by reference.  <u>Love & Madness, Inc. v. Claire's Holdings, LLC</u>, No. 21 Civ. 1913 (AT) (SLC), 2021 WL 4554058, at *1–2 (S.D.N.Y. Oct. 4, 2021) ("<u>L&M I</u>").

As is relevant here, according to an engagement letter dated February 7, 2020 (the "Engagement Letter"), L&M engaged Barton to provide legal representation in intellectual property and other matters, with the principal attorneys designated as Laura-Michelle Horgan ("Horgan") and Maurice Ross ("Ross").   <u>See</u> <u>L&M I</u>, 2021 WL 4554058, at *1 & n.1 (citing ECF Nos. 84 ¶ 3; 89; 91).  Horgan and Ross agreed to reduce their hourly rates to $400 and $550, respectively.  <u>L&M I</u>, 2021 WL 4554058, at *1 (citing ECF No. 89 at 2).  On March 4, 2021, L&M, represented by Barton, filed the original complaint against Claire's asserting claims for copyright infringement of five of L&M's designs under the Copyright Act, 17 U.S.C. § 101 <u>et</u> <u>seq.</u> (the "Copyright Claims"), unfair business practices in violation of New York General Business Law § 349 and unjust enrichment (the "State Law Claims").  (ECF No. 1 ¶¶ 75–130 (the "Complaint")).  On May 18, 2021, L&M filed an amended complaint (the "FAC") adding claims based on four additional L&M designs, and on June 2, 2021, filed a second amended complaint (the "SAC"), based on the same nine L&M designs as in the FAC.  (ECF Nos. 42; 44; <u>see</u> ECF No. 58 at 8–11 (comparing Complaint, FAC, and SAC)).  On July 29, 2021, Claire's moved to dismiss the State Law Claims as preempted by the Copyright Act based on well-settled Second Circuit authority, and for failure to state a claim.  (ECF Nos. 57; 58 (the "MTD")).

On August 9, 2021, while the MTD was pending, Doniger/Burroughs ("Doniger") informed Barton that L&M had engaged Doniger to represent it going forward, and asked Barton to execute a substitution of counsel form and deliver L&M's client file. L&M I, 2021 WL 4554058, at *1 (citing ECF No. 63). (See ECF No. 136-7 at 3–5). Barton declined to deliver the file until L&M paid outstanding legal fees and costs totaling $104,641.58 (the "Initial Fees"). L&M I, 2021 WL 4554058, at *1 (citing ECF Nos. 63–64). On August 18, 2021, Doniger moved for an order substituting itself as L&M's counsel and directing Barton to deliver L&M's file. L&M I, 2021 WL 4554058, at *2 (citing ECF No. 63 (the "Doniger Motion")). Barton countered by asking the Court to order L&M to pay the Initial Fees or post a bond, which the Court interpreted as a motion to assert a lien pursuant to New York Judiciary Law § 475 ("Section 475"). (ECF No. 64).[2] See L&M I, 2021 WL 4554058, at *1–2.

At a hearing on September 10, 2021 (the "Hearing"), the Court held that L&M had not shown that it discharged Barton "for [] cause" and, therefore, Barton had "a valid right to retain [L&M's] files[,]" but urged L&M and Barton to agree to a payment schedule that would "stop[] the litigation [from] being held hostage." L&M I, 2021 WL 4554058, at *2 (quoting ECF No. 78 at 15:12–20, 17:4–11). After L&M and Barton were unable to resolve the fee dispute, on September 24, 2021, Barton filed a supplemental letter "explaining why it believed the amount of the [Initial] Fees was reasonable and reiterating its request that L&M be required to post a bond before

---

[2] In a letter to the Honorable Analisa Torres dated August 18, 2021, Barton responded to the Doniger Motion and requested a hearing to address both Doniger's request to substitute as L&M's counsel and Barton's demand that L&M pay the Initial Fees, but submitted no evidentiary support for the Initial Fees, apart from attaching Barton's August 12, 2021 letter to Doniger asserting the amount Barton believed L&M owed. (ECF Nos. 64 (the "August 18 Letter"); 64-1). Judge Torres then referred the matter. (ECF No. 65).

Barton would turn over the client file."  L&M I, 2021 WL 4554058, at *2 (citing ECF No. 81 (the "September 24 Letter")).  Barton submitted 85 pages of invoices (the "Invoices") for the Court's in camera review, but did not attach declarations from Horgan or Ross, attorney biographies, or any other evidence in support of the Initial Fees.  (See ECF No. 81; 84; 84-1 – 84-4).  Doniger's subsequent response quantified the legal fees that L&M had already paid Barton, accused Barton of "facially excessive billing[,]" and urged the Court to deny the request for bond.  L&M I, 2021 WL 4554058, at *4 (citing ECF No. 83).   Heather McAvoy, L&M's Chief Executive Officer ("McAvoy"), submitted a declaration attesting that a medical condition since 2018 prevented her from working, quantifying the fees she had paid Barton in this action and an unrelated Social Security matter, and describing her financial status.  (ECF No. 84 (the "McAvoy Declaration")).[3]

On October 4, 2021, in L&M I, the Court:  (i) held that, "[b]ecause L&M did not discharge Barton 'for cause,' Barton ha[d] the right to assert a charging or retaining lien" under Section 475; (ii) denied Barton's request for a retaining lien and ordered Barton to deliver L&M's client file to Doniger; (iii) exercised its discretion to defer the determination of the amount of any charging lien until a later stage of the action (the "Charging Lien"); (iv) denied Barton's request to require L&M to post a bond; and (v) substituted Doniger as L&M's counsel.  2021 WL 4554058, at *4–5.[4]

On October 6, 2021, L&M filed a notice of voluntary dismissal without prejudice of the State Law Claims.  (ECF No. 102 (the "Notice of Dismissal")).  On November 10, 2021, Claire's filed

---

[3] Doniger also submitted an attorney declaration from Laura M. Zaharia, Esq., attesting to her calculations of amounts that Barton recorded for various tasks according to the Invoices.  (ECF No. 85 (the "First Zaharia Declaration)).

[4] Because, in L&M I, the Court "made no determination as to whether, if at all, [L&M] would be entitled to recover attorneys' fees and costs," the Court denied as unnecessary Claire's request for clarification that 17 U.S.C. § 412(b) of the Copyright Act prevented an award of fees to L&M under 17 U.S.C. § 505. (ECF Nos. 103; 104).

a motion to vacate the Notice of Dismissal (the "MTV"), which L&M subsequently opposed. (ECF Nos. 111–15).  On February 9, 2022, Judge Torres denied the MTD and the MTV without prejudice.  (ECF No. 124).[5]

At the request of L&M and Claire's, the Court mediated their settlement negotiations during conferences on December 6, 2021, March 3, 2022, March 10, 2022, April 27, 2022, and May 12, 2022, at the conclusion of which they reached the Settlement providing that, <u>inter</u> <u>alia</u>, Claire's shall make a payment to L&M (the "Settlement Payment").  (ECF Nos. 110; 127; 128; 132 at 1–2; ECF min. entries Dec. 6, 2021; Mar. 3, 2022; Mar. 10, 2022; Apr. 27, 2022; May 12, 2022). On June 21, 2022, Judge Torres so-ordered the parties' consent to Magistrate Judge jurisdiction for all purposes.  (ECF Nos. 129–30).

On June 27, 2022, L&M and Claire's filed the Settlement Motion, in which they asked the Court to:  (i) exercise jurisdiction over Barton's Charging Lien against L&M's recovery in this action and "set the amount of that lien" to enable the parties to "effect the purpose of settlement"; (ii) set a briefing schedule for Barton's Charging Lien; and (iii) authorize Claire's to pay the Settlement Payment "without Claire's bearing any liability" to Barton.  (ECF Nos. 131; 131-1). In support of the Settlement Motion, the parties submitted a memorandum of law and declaration of Laura M. Zaharia, Esq. (the "Second Zaharia Declaration")).  (ECF Nos. 132; 132-1). On June 29, 2022, the Court issued an order asserting jurisdiction over Barton's Charging Lien, setting a briefing schedule, authorizing Claire's to pay the Settlement Payment without bearing liability to Barton, and ordering L&M to serve the Settlement Motion and the Court's Order on Barton.  (ECF No. 134 (the "June 29 Order")).

---

[5] Doniger had filed, on behalf of L&M, a notice of non-opposition to the MTD.  (ECF No. 70).

In response to the June 29 Order, on July 22, 2022, Barton "resubmit[ed]" the September 24 Letter, the Engagement Letter, and the Invoices with a conclusory declaration from Horgan revising the amount that L&M owed to $107,331.19 (the "Revised Fees"), but neither explaining the increase from the Initial Fees nor providing any attorney biographies. (ECF Nos. 136; 136-1 – 136-7).   On August 5, 2022, L&M opposed Barton's Charging Lien, submitting a memorandum of law (ECF No. 139-1), and another declaration of Laura M. Zaharia, Esq., which attached a larger set of Barton's invoices to L&M (ECF Nos. 139-2 (the "Third Zaharia Declaration"); 139-3).   On August 12, 2022, Barton submitted a reply memorandum of law (ECF No. 141), and another declaration from Horgan describing communications with McAvoy about Barton's representation of L&M and arguing that it would be "unfair to let [McAvoy] get away without compensating" Barton for "work [it was] doing at her express direction and with her authority."  (ECF No. 142 ¶ 9).[6]

### III.  <u>DISCUSSION</u>

**A.  <u>Legal Standards</u>**[7]

A federal court "'may, in its discretion, exercise ancillary jurisdiction to hear fee disputes . . . between litigants and their attorneys when the dispute relates to the main action . . . .'" <u>Chesley v. Union Carbide Corp.</u>, 927 F.2d 60, 64 (2d Cir. 1991) (quoting <u>Cluett, Peabody & Co. v. CPC Acq. Co.</u>, 863 F.2d 251, 256 (2d Cir. 1988)); <u>see</u> 28 U.S.C. § 1367.  Under New York law, a

---

[6] The Court, having heard from the parties and Barton during the Hearing and having presided over numerous conferences, deemed further argument on the Motions unnecessary.  (ECF No. 143).

[7] In the Motions, the parties have not briefed whether L&M might be entitled to recover from Claire's attorneys' fees and costs under the Copyright Act, a matter that Claire's previously disputed (<u>see</u> ECF No. 103).  Because the analysis under Section 475 is sufficient to resolve the Motions, the Court makes no finding as to the availability of fee-shifting under the Copyright Act in this action.

withdrawing attorney has "a charging lien[] against any recovery or settlement if the fee has not

yet been paid for his [or her] services and disbursements . . . unless the magistrate judge decides

that the attorney withdrew without good and sufficient cause[.]" Misek-Falkoff v. Int'l Bus. Mach.

Corp., 829 F. Supp. 660, 663 (S.D.N.Y. 1993).  New York Judiciary Law § 475 provides:

> From the commencement of an action, special or other proceeding in any court or
> before any state, municipal or federal department, except a department of labor,
> or the service of an answer containing a counterclaim . . . the attorney who
> appears for a  party has a lien upon his or her client's cause of action, claim or
> counterclaim, which attaches to a verdict, report, determination, decision, award,
> settlement, judgment or final order in his or her client's favor, and the proceeds
> thereof in whatever hands they may come; and the lien cannot be affected by any
> settlement between the parties before or after judgment, final order or
> determination.  The court upon the petition of the client or attorney may
> determine and enforce the lien.

N.Y. Judiciary L. § 475.  "[A]n attorney need not be counsel of record at the time a plaintiff

receives judgment or settlement proceeds in order to have a lien on those proceeds, so long as

the attorney was counsel of record at one point in the proceedings." Petition of Harley & Browne,

957 F. Supp. 44, 48 (S.D.N.Y. 1997) (citing Klein v. Eubank, 87 N.Y.2d 459, 461 (1996)).

"[A]n attorney loses his right to enforce a charging lien if the attorney withdraws or is discharged

for cause." Harley & Browne, 957 F. Supp. at 48.  "A hearing is required to determine if

[an attorney] was discharged for cause, and, if not, the amount of his fee on a quantum meruit

basis[.]" Mason v. City of N.Y., 67 A.D.3d 475, 475–76 (1st Dep't 2009) (citing Teichner v. W & J

Holsteins, Inc., 64 N.Y.2d 977, 979 (1985)).

The threshold question of whether an attorney was discharged "for cause" requires a

court to assess whether "there has been a significant breach of legal duty." Allstate Ins. Co. v.

Nandi, 258 F. Supp. 2d 309, 312 (S.D.N.Y. 2003).  The client must show that her former attorney's

conduct "constituted a failure to properly represent [her] interests[.]" Costello v. Kiaer, 278

A.D.2d 50 (1st Dep't 2000); see Antonmarchi v. Consol. Edison Co. of N.Y., 678 F. Supp. 2d 235,

241 (S.D.N.Y. 2010) (concluding that former attorney provided "reasonable and necessary

services" and did not "violate[] any legally or professionally imposed duty" to his client, and

therefore, discharge was not for cause and charging lien was permitted); Casper v. Lew

Lieberbaum & Co., No. 97 Civ. 3016 (JGK) (RLE), 1999 WL 335334, at *8 (S.D.N.Y. May 26, 1999);

Campagnola v. Mulholland, Minion & Roe, 76 N.Y.2d 38, 44 (1990) ("Where the discharge is for

cause, the attorney has no right to compensation or a retaining lien, notwithstanding a specific

retainer agreement[.]").  "Courts typically find a discharge 'for cause' where there has been a

significant breach of legal duty."  Allstate, 258 F. Supp. 2d at 312.  The client must show that her

former counsel's conduct "constituted a failure to properly represent [her] interests."  Costello,

278 A.D.2d at 50.  New York courts are generally consistent in finding that an attorney has been

dismissed "for cause" when one or more of the following were present:

> (1) the attorney's failure to perform under the employment contract; (2) his lack
> of diligence in so performing; (3) his lack of ordinary skill or care in so performing;
> (4) his making of demands on the client which violate the terms or exceed the
> scope of the contract; (5) his taking of actions contrary to the client's interests or
> objectives; (6) his indulging in some sort of unprofessional conduct while handling
> the client's affairs; (7) his venting of personal or economic hostility toward the
> client; and (8) his loss of the client's trust and confidence.

Chen v. LJC Trading N.Y., Inc., No. 19 Civ. 3276 (SJF) (AKT), 2020 WL 10574176, at *5–6 (E.D.N.Y.

Nov. 20, 2020) (quoting Holcombe v. US Airways Grp., Inc., No. 08 Civ. 1593 (SLT) (JO), 2017 WL

10084142, at *10–11 (E.D.N.Y. Aug. 4, 2017)).

If the client did not discharge the attorney for cause, a court may fix the amount of a

charging lien "on a quantum meruit basis, ascertaining the reasonable value of the legal services

rendered up to the date of" the termination.  Sequa Corp. v. GBJ Corp., 156 F.3d 136, 148 (2d Cir.

1998) (citing Lai Ling Cheng v. Modansky Leasing Co., 73 N.Y.2d 454, 457 (1989)).  Absent

agreement between the parties fixing the amount of a charging lien, courts may consider the

following factors to assess the amount of a charging lien on a quantum meruit basis:

> the difficulty of the matter, the nature and extent of the services rendered, the
> time reasonably expended on those services, the quality of performance by
> counsel, the qualifications of counsel, the amount at issue, and the results
> obtained[.]

Sequa, 156 F.3d at 148 (citing Spano v. Scott, 166 A.D.2d 917 (4th Dep't 1990)).

After "consider[ing] all the factors relevant to a quantum meruit fee analysis," courts

appropriately "turn[] to [a] lodestar analysis to reach a specific dollar figure for the value of the

services rendered[.]"  Sequa, 156 F.3d at 148.  The lodestar analysis involves "multiplying the

number of hours reasonably expended on the litigation times a reasonable hourly rate[,]" Blum

v. Stenson, 465 U.S. 886, 888 (1984) (citing Hensley v. Eckerhart, 461 U.S. 424 (1983)), which

results in the "lodestar" figure, or, in the Second Circuit's preferred parlance, the "presumptively

reasonable fee."  Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany

Cnty. Bd. of Elections, 522 F.3d 182, 183 (2d Cir. 2008).  A court may adjust the presumptively

reasonable fee "as necessary in the particular case."  Blum, 465 U.S. at 888.

"In setting the reasonable hourly rate, 'a court must determine what a reasonable paying

client would be willing to pay for the legal services, in other words, the appropriate market rate

for counsel over the course of the number of hours appropriately worked.'"  De La Paz v. Rubin

& Rothman, LLC, No. 11 Civ. 9625 (ER), 2013 WL 6184425, at *10 (S.D.N.Y. Nov. 25, 2013) (quoting

Torres v. City of N.Y., No. 07 Civ. 3473 (GEL), 2008 WL 419306, at *1 (S.D.N.Y. Feb. 14, 2008)).

"Courts are also to consider that a reasonable client wishes to 'spend the minimum necessary to

litigate the case effectively.'"  Shepherd v. L. Offs. of Cohen & Slamowitz, LLP, No. 08 Civ. 6199

(CM) (LMS), 2010 WL 4922314, at *2 (S.D.N.Y. Nov. 29, 2010) (quoting Arbor Hill, 522 F.3d at 190). Determining the reasonable hourly rate requires "'a case-specific inquiry into the prevailing market rates for counsel of similar experience and skill to the fee applicants counsel[,]'" which may "'include judicial notice of the rates awarded in prior cases and the court's own familiarity with the rates prevailing in the district.'" De La Paz, 2013 WL 6184425, at *10 (quoting Farbotko v. Clinton Cnty. of N.Y., 433 F.3d 204, 209 (2d Cir. 2005)). Reasonable hourly rates may "var[y] by both practice area and location[,]" Gamero v. Koodo Sushi Corp., 328 F. Supp. 3d 165, 173 (S.D.N.Y. 2018), and "should be current rather than historic." Dunn v. Advanced Credit Recovery Inc., No. 11 Civ. 4023 (PAE) (JLC), 2012 WL 676350, at *5 (S.D.N.Y. Mar. 1, 2012) (citations omitted), adopted by, 2012 WL 1114335 (S.D.N.Y. Apr. 3, 2012). In determining whether counsel's hourly rate is reasonable, "the burden is on the fee applicant to produce satisfactory evidence . . . that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." O.R. v. N.Y.C. Dep't of Educ., 340 F. Supp. 3d 357, 367 (S.D.N.Y. 2018) (quoting Blum, 465 U.S. at 895 n.11).

"The other prong of the lodestar equation is the reasonable hours for which compensation should be awarded." In re Arb. Between Okyere & Houslanger & Assocs., PLLC, No. 12 Civ. 1463 (JPO) (GWG), 2015 WL 4366865, at *9 (S.D.N.Y. May 28, 2015). "A party seeking attorneys' fees bears the burden of supporting its claim of hours expended by accurate, detailed, and contemporaneous time records." Echevarria v. Insight Med., P.C., 102 F. Supp. 3d 511, 516 (S.D.N.Y. 2015). The records, however, need not specify "the exact number of minutes spent nor the precise activity to which each hour was devoted nor the specific attainments of each attorney." U.S. Football League v. Nat'l Football League, 704 F. Supp. 474, 477 (S.D.N.Y.1989),

aff'd, 887 F.2d 408 (2d Cir. 1989).  "The critical inquiry is whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures."  De La Paz, 2013 WL 6184425, at *13 (internal quotation marks and citations omitted).

An award of attorneys' fees may only provide reimbursement for "hours reasonably expended on the litigation[,]" and not for hours "that are excessive, redundant, or otherwise unnecessary[.]"  See Hensley, 461 U.S. at 433–34.  Should the Court find that certain hours are excessive, the Court may deduct those hours, see, e.g., Tatintsian, 2020 WL 2836718, at *6, or, alternatively, "'the [C]ourt has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application.'"  Rodriguez ex rel. Kelly v. McLoughlin, 84 F. Supp. 2d 417, 425 (S.D.N.Y. 1999) (quoting Kirsch v. Fleet St., Ltd., 148 F.3d 149, 173 (2d Cir. 1998)); see Sequa, 156 F.3d at 148 ("[T]he determination of the reasonable value of the attorney's services is a matter within the sound discretion of the trial court.") (citation omitted).

**B.  Application**

The Court first assesses Barton's entitlement to any Charging Lien in this action, before determining the amount of the Charging Lien, i.e., the presumptively reasonable fees to which Barton is entitled under the lodestar method.  See Capitol Recs., LLC v. ReDigi Inc., No. 12 Civ. 95 (RJS), 2022 WL 3348385, at *1 (S.D.N.Y. Aug. 12, 2022) (explaining that, "[a]fter concluding a party is entitled to attorneys' fees, a court determines the 'presumptively reasonable fee' to which that party is entitled . . .") (quoting Arbor Hill, 522 F.3d at 189–90); Webber v. Dash, No. 19 Civ. 610 (RWL), 2022 WL 2751874, at *6–9 (S.D.N.Y. July 14, 2022) (determining first whether

plaintiff's counsel was entitled to recover fees under the Copyright Act before assessing amount of award).

### 1.   Barton's Entitlement to Attorneys' Fees

As noted above, a discharged attorney may not assert a charging lien against a client if the client discharged the attorney "for cause." Antonmarchi, 678 F. Supp. 2d at 241.  The Court again declines to revise its ruling at the Hearing and in L&M I that L&M did not meet its burden to show that it had discharged Barton "for [] cause."  (ECF No. 78 at 15:12–20).  See L&M I, 2021 WL 4554058, at *4.  While the Settlement Motion describes several examples of "plainly excessive billing" that justify reducing the Charging Lien, the record does not demonstrate that Barton "violated any legally or professionally imposed duty" owed to L&M. Allstate, 258 F. Supp. 2d at 312.  The Court therefore maintains its ruling that, because L&M did not discharge Barton "for cause," Barton is entitled to a Charging Lien.  L&M I, 2021 WL 4554058, at *4–5.

### 2.   Calculation of Attorneys' Fees

Given the resolution of the copyright dispute between L&M and Claire's by way of the Settlement, the time is ripe to fix the Charging Lien, that is, the amount of attorneys' fees Barton is to receive from the Settlement Payment.  See Universal Acupuncture Pain Servs., P.C. v. Quadrino & Schwartz, P.C., 370 F.3d 259, 264 (2d Cir. 2004) (explaining that a district court does not "abuse[] its discretion by postponing the determination of the fair and reasonable value of an attorney's services [] in order to avoid unnecessary delay in the underlying litigation").  The Court first addresses the parties' arguments concerning the relevant quantum meruit factors before turning to the lodestar analysis.

a. **Quantum Meruit Factors**

L&M argues that the <u>quantum</u> <u>meruit</u> factors "weigh heavily" in favor of reducing Barton's Charging Lien. (ECF No. 139-1 at 6). First, L&M argues that its "only viable claims against Claire's were straight-forward copyright infringement claims[,]" but Barton nevertheless asserted the pre-empted State Law Claims, which "significantly complicated the case and hardened [Claire's] settlement position[.]" (<u>Id.</u> at 6–7). Second, L&M argues that Barton's Invoices improperly include "hours spent on trademark matters and other claims unrelated to this case," as well as "unrelated claims it never filed against third parties" and a Social Security matter the fees for which McAvoy has already paid. (<u>Id.</u> at 8–10). Barton responds that it is entitled to the full amount of the Revised Fees because McAvoy approved the work the firm performed and "never once disputed the fees" reflected in the Invoices. (ECF No. 141 at 4). The Court considers each of the <u>quantum</u> <u>meruit</u> factors in turn. <u>See</u> <u>Sequa</u>, 156 F.3d at 148 (finding no error where "magistrate judge first carefully considered all the factors relevant to a <u>quantum</u> <u>meruit</u> fee analysis").

i. **Difficulty of the matter and the nature and extent of the services rendered**

L&M argues that, although the Copyright Claims were "uncomplicated[,]" Barton nevertheless spent over 100 hours drafting pleadings that asserted "trademark and state law claims that were plainly not viable and/or were preempted by federal copyright laws." (ECF No. 139-1 at 7 (citing ECF No. 139-2 ¶¶ 4–5)). L&M points out that the unfair business practices claim that Barton included in the Complaint and FAC contained "recycled allegations of copyright infringement" that were "clearly preempted[.]" (ECF No. 139-1 at 7 (quoting ECF No. 44 ¶ 198)). L&M also notes that Barton researched "reverse confusion" trademark claims

"that were never viable" because "Claire's never used" L&M's trademarks and there was no evidence that L&M's customers "ever believed they were doing business with Claire's." (ECF No. 139-1 at 8). Barton does not offer a justification for expending time on the subsequently withdrawn State Law Claims or trademark claims that were never filed, except to say that "steps to formalize" L&M's business and "register [its] intellectual property . . . needed to be done before [L&M] could proceed with filing infringement claims." (ECF No. 141 at 5 (citing ECF No. 142 ¶ 4)).

The Court finds that this action presented a straightforward copyright dispute that Barton unnecessarily complicated by asserting weak or non-viable claims. L&M's valid claims are predicated on Claire's intentional copying of nine of L&M's accessories designs. (See ECF No. 44). Under well-settled Second Circuit authority:

> [t]he Copyright Act exclusively governs a claim when: (1) the particular work to which the claim is being applied falls within the type of works protected by the Copyright Act under 17 U.S.C. §§ 102 and 103, and (2) the claim seeks to vindicate legal or equitable rights that are equivalent to one of the bundle of exclusive rights already protected by copyright law under 17 U.S.C. § 106. See 17 U.S.C. § 301(a); Nat'l Basketball Ass'n v. Motorola, Inc., 105 F.3d 841, 848 (2d Cir. 1997). The first prong of this test is called the 'subject matter requirement,' and the second prong is called the 'general scope requirement.' See Nat'l Basketball Ass'n, 105 F.3d at 848.

Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc., 373 F.3d 296, 305 (2d Cir. 2004). The subject matter requirement is met where the work "fit[s] into one of the copyrightable categories in a broad sense." Id. The general scope requirement looks to whether the supposed state law claim involves "acts of reproduction, adaptation, performance, distribution or display[,]" and does not include any "extra element" that would make it "qualitatively different from a copyright infringement claim. Id. at 305–07. The Second Circuit "take[s] a restrictive view of what extra

elements transform an otherwise equivalent claim into one that is qualitatively different from a copyright infringement claim."  Id. at 306 (citing Nat'l Basketball Ass'n, 205 F.3d at 851).

As Claire's persuasively argued in the MTD, and as L&M conceded after Doniger appeared, the Copyright Act preempted the State Law Claims that Barton included in the Complaint, FAC, and SAC.  (ECF Nos. 58; 70).  The unfair business practices claim was nothing more than a rewording of the copyright infringement claims,[8] and the Second Circuit had previously explained that an unjust enrichment claim under New York law has the same "fundamental nature" as a copyright infringement claim and is thus preempted.  Briarpatch, 373 F.3d at 306–307 (citing, inter alia, 1 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 1.01[B][1][g] (2003) ("[A] state law cause of action for unjust enrichment or quasi contract should be regarded as an 'equivalent right' and hence, pre-empted insofar as it applies to copyright subject matter.")).  Given this well-settled precedent, Barton was not justified in rendering any more than a de minimis amount of services considering—and quickly rejecting—any notion of asserting the State Law Claims, particularly given the Firm's professed intellectual property expertise.[9]  Likewise, expending significant time researching "reverse confusion" trademark claims—which involve "the misimpression that the junior user is the source of the senior user's goods[,]" Trouble v. Wet Seal, Inc., 179 F. Supp. 2d 291, 296 (S.D.N.Y. 2001)—made little sense given the absence of any example of Claire's using one of L&M's marks or any suggestion that consumers believed Claire's

---

[8] Compare ECF No. 44 ¶ 198 ("The Claire's Defendants' [sic] acted willfully and intentionally in making and selling products that incorporate Plaintiff's copyrighted designs, with full knowledge of Plaintiff's rights, and with an intent to cause confusion or mistake or to deceive customers into believing there is an affiliation between Claire's and Plaintiff . . .") with id. ¶¶ 101–06 (alleging that Claire's "committed acts of copyright infringement . . . which were willful, intentional and malicious . . .").

[9] See https://www.bartonesq.com/attorney/laura-michelle-horgan/ (last visited Oct. 5, 2022); https://www.bartonesq.com/attorney/maurice-n-ross/ (last visited Oct. 5, 2022).

produced L&M's products.  See, e.g., RiseandShine Corp. v. PepsiCo, Inc., 41 F.4th 112, 119 (2d Cir. 2022) ("Reverse confusion occurs when consumers 'believe, erroneously, that the goods marketed by the prior user are produced by the subsequent user.'") (quoting Lang v. Ret. Living Pub. Co., 949 F.2d 576, 583 (2d Cir. 1991)).

Barton claims that McAvoy "had taken almost no steps to formalize her business or register any of her intellectual property," necessitating that such work "be done before [L&M] could proceed with filing infringement claims."  (ECF No. 141 at 5; see id. at 10 (asserting that L&M's "corporate informalities, disorganization, and lack of any of the necessary copyright and trademark registrations to bring claims")).  Even if Barton's maligning description of its former client is accurate, however, Barton does not dispute the State Law Claims' lack of merit, and that, as of May 2021, McAvoy had already paid Barton a substantial amount of fees.  (ECF No. 84 ¶ 3).[10] Barton's only explanation for how L&M incurred an additional more than $100,000 in fees is that McAvoy called and texted Horgan daily, if not more often.  (ECF No. 142 ¶ 6; see id. ¶ 7 ("McAvoy contacted me personally on almost a daily basis (several times a day) during the year and a half that the Firm represented her company.  She often contacted me on my mobile phone during the evenings and on weekends when I was spending time with my young children.")).  In the same breath, Horgan claims to have begun "regularly forgoing entering all of the time that I spent speaking with Ms. McAvoy or responding to her many emails, text messages and calls on a near daily basis."  (Id. ¶ 7).  None of Horgan's complaints about having a high-maintenance client who may have been inexperienced in intellectual property law rebut L&M's showing that this action

---

[10] By the Court's calculation based on the Invoices, L&M has paid Barton $52,844.62 on intellectual property related matters.  (ECF Nos. 136-3 – 136-7).  In her Declaration, McAvoy attests that the total amount she has paid Barton for all matters is substantially greater.  (ECF No. 84).

involved straightforward copyright claims that Barton unnecessarily complicated by asserting—in not one but three pleadings—meritless State Law Claims.  The Court therefore finds that the first <u>quantum</u> <u>meruit</u> factor justifies a substantial reduction in the amount of the Charging Lien.

### ii.   <u>Time reasonably expended</u>

L&M argues that the Revised Fees improperly include time Barton expended on four categories of services related to other matters that must be excluded from the Charging Lien: (i) the State Law Claims; (ii) trademark claims; (iii) claims not filed against other third parties; and (iv) a Social Security matter.  (ECF No. 139-1 at 8–10; <u>see also id.</u> at 8 (acknowledging that the trademark and State Law Claims "may have been worth brief consideration," but arguing that "Barton's billing was patently unreasonable")).  L&M also argues that the time Barton billed on matters related to this action "was unreasonable and grossly inflated."  (<u>Id.</u> at 10–11).  Barton responds that the trademark work was a prerequisite to "filing infringement claims[,]" and points to "highly detailed" entries describing "extensive work [] to file copyright registrations, as well as trademarks" to support its assertion that all the time reflected on the Invoices was "reasonably expended."  (ECF No. 141 at 5–7, 10).  Barton appears to acknowledge that it cannot, through the Charging Lien against the Settlement Payment, recover outstanding amounts that L&M owes for other matters.  (<u>See</u> ECF No. 141 at 8 n.3).

A "charging lien only extends to fees arising out of the attorney's services in a specific action or proceeding in which they were incurred and does not include fees due to an attorney for other matters."  <u>Emery Celli Brinckerhoff & Abady LLP v. Rose</u>, 29 Misc.3d 1230(A), at *4 (Sup. Ct. N.Y. Cnty. 2010); <u>see</u> <u>In the Matter of Rosenblum</u>, 121 A.D.2d 546, 546–47 (2d Dep't 1986) (explaining that the only claims to which a charging lien may attach are those for which an "action

or proceeding was commenced"). As Barton acknowledges, the Charging Lien can attach only to the Settlement Payment, and Barton cannot recoup amounts L&M might owe for other matters against parties other than Claire's. Accordingly, the Court excludes time related to claims that Barton did not assert on L&M's behalf in this action.[11] Similarly, to the extent that Barton billed time to the meritless State Law Claims or reverse confusion trademark claims, the Court finds that such time was not reasonably expended and must also be excluded from Barton's Charging Lien. Finally, as explained further below, the Court finds that much of the time Barton expended was excessive, and reduces the amount of the Charging Lien accordingly. (See § III.B.2.b.ii, infra).

### iii.   Quality of the performance by Barton and results obtained

L&M argues that Barton's vague entries on the Invoices render it difficult "to address the quality" of the firm's performance, and maintains that Barton performed unnecessary work and recorded "facially excessive" amounts of time on this action. (ECF No. 139-1 at 12). Barton responds that it "successfully obtained numerous intellectual property registrations for [L&M] and [] was able to proceed with filing the Complaint in this case[.]" (ECF No. 141 at 10).

The Court finds that Barton's representation of L&M in this action left something to be desired. First, the docket reflects numerous occasions on which Barton made deficient or erroneous filings that the Clerk of the Court required Barton to correct and refile. (ECF Nos. 5–10 (incorrect summonses); 40–43 (incorrectly filed FAC); ECF min. entries Mar. 5, 2021; Mar. 9, 21; Mar. 15, 2021; June 2, 2021). It was reasonable for L&M to expect that, by hiring New York-

---

[11] The Court excludes Barton's time related to claims against two unrelated third parties, for which Barton recorded approximately 17.8 and 7.6 hours, respectively (ECF Nos. 139-1 at 9–10; 139-2 ¶ 7; 136-3 at 5, 7, 9, 12; 136-4 at 16).

based attorneys admitted to practice in this District, Barton would at a minimum, properly file court documents without having to redo them.  Second, as discussed above, Barton asserted the preempted State Law Claims, and unnecessarily researched reverse confusion copyright claims that L&M's circumstances did not justify.  (See § III.B.2.a.i, supra).  Third, although it no longer represents L&M, the Invoices Barton has submitted include references to other matters not recoverable under the Charging Lien, include fees incurred after L&M terminated the firm, and lack any breakdown as to the attorneys who worked on this action, their biographies, and the number of hours worked, which has required this Court to expend more effort than necessary to determine the reasonable amount of fees.  (See ECF No. 136-7 at 3-5; n. 12, supra).  Finally, it bears noting that productive settlement discussions did not begin until after Barton ceased representing L&M.  (See ECF No. 105).  Accordingly, the Court finds that the quality of the representation and the results obtained justify a substantial reduction in the amount of the Charging Lien.

### iv.    Qualifications of counsel

L&M correctly notes that Barton has failed to provide evidence of the qualifications of the attorneys who worked on the matter, but suggests that, based on the attorneys' experience as shown on the firm's website, they "should have known" that the time they were expending was excessive.  (ECF No. 139-1 at 13).  Barton's submissions note that Ross is "a highly qualified intellectual property attorney with more than three decades of experience[,]" but do not discuss the other attorneys.  (ECF No. 141 at 10).  While the Court has been able to locate some biographical information from the firm's website, Barton's failure to provide the Court with the necessary information to evaluate its fee request warrants a reduction in the amount of the

Charging Lien.  See Capitol Records, 2022 WL 3348385, at *4 (reducing hourly rates in the absence

of information about legal team's experience); Top Jet Enter., Ltd. v. Kulowiec, No. 21 MC 789

(RA) (KHP), 2022 WL 1184245, at *3–4 (S.D.N.Y. Apr. 21, 2022) (reducing hours where party failed

to provide information regarding attorneys' experience).

Accordingly, after considering each of the quantum meruit factors, the Court finds that,

although Barton is entitled to a Charging Lien, a substantial reduction is warranted.

### b.  Lodestar Analysis

The Court now applies the lodestar analysis to determine "the fair and reasonable value

of the services [Barton] rendered" to L&M.  Chen, 2020 WL 10574176, at *8.

### i.  Reasonable Hourly Rate

The Invoices reflect that, in addition to Horgan and Ross, three associates (Sarah Sears,

Amy Y. Chen, and Rita Lenane-Massey), and three paralegals worked on this matter.  (ECF

Nos. 136-3 – 136-7).  Barton requests that the Court award hourly rates of $550 for Ross, $400

for Horgan, $375–450 for the associates, and $100 for the paralegals.  (ECF Nos. 136-3 – 136-7).

Courts assessing attorneys' fees in copyright cases in this District have deemed

reasonable hourly rates of $400 to $750 for partners, $200 to $450 for associates, and up to $200

for paralegals.  See Webber, 2022 WL 2751874, at *9–10 (finding that hourly rates of $500 to

$550 were reasonable for experienced partner in intellectual property matter); Capitol Records,

2022 WL 3348385, at *4 (finding that hourly rates of $500 to $500 for experienced partner, $260

for associate, $200 for experienced paralegal, and $90 for paralegal for whom party provided no

information); U. King Film Distr. Ltd. v. Does 1-10, No. 21 Civ. 11024 (KPF), 2022 WL 1751190, at

*3–4 (S.D.N.Y. May 31, 2022) (awarding hourly rate of $450 for attorney who had specialized in

copyright and trademark matters for over 30 years); Latin Am. Music Co., Inc. v. Spanish Broad. Sys., Inc., No. 13 Civ. 1526 (RJS), 2020 WL 2848232, at *6–7 (S.D.N.Y. June 1, 2020) (noting that courts in this District have deemed reasonable hourly rates of $400 to $750 for partners, $200 to $450, and $150 to $200 for paralegals in copyright cases).

Barton having failed to "provide information on all of the attorneys and staff whose time is included in the application[,]" the Court resorts to a review of Barton's firm website for information about the timekeepers' experience.  Top Jet, 2022 WL 1184245, at *3.  Ross, the leader of Barton's Intellectual Property Group, attended Brown University and New York University Law School, has been admitted to practice in New York and New Jersey for over thirty years, and has been quoted in several publications discussing intellectual property law issues. See https://www.bartonesq.com/attorney/maurice-n-ross/ (last visited Oct. 5, 2022).  (See ECF No. 141 at 4–5).  Courts in this District have awarded partners with comparable experience higher than what Barton requests for Ross.  See Capitol Records, 2022 WL 3348385, at *2 (collecting cases awarding senior copyright partners $570 to $785 per hour); Latin Am. Music, 2020 WL 2848232, at *6 (approving $750 hourly rate for partner in copyright action).  The Court therefore finds that an hourly rate of $550 is reasonable for an attorney of Ross's experience.

Horgan, a partner at Barton, attended New York University and Brooklyn Law School, has been admitted to practice in New York since at least 2005, and has written several articles on intellectual property law issues.  See https://www.bartonesq.com/attorney/laura-michelle-horgan/ (last visited Oct. 5, 2022).  The Court finds that her requested hourly rate of $400 is consistent with, and actually at the low end of, rates awarded to attorneys with experience comparable to Horgan in copyright matters in this District, and is therefore reasonable.  See Latin

Am. Music, 2020 WL 2848232, at *6 (noting that courts have deemed hourly rates of $400 to $750 reasonable for partners in copyright cases).

Chen, an associate, graduated from Brown University and The George Washington University Law School, previously worked at law firms in Paris and Amsterdam, and is admitted to practice in New York.  See https://www.bartonesq.com/attorney/amy-y-chen/ (last visited Oct. 5, 2022).  Chen appears, to date, however, to have materially less intellectual property experience than Horgan, and, accordingly, the Court finds that a reduction in her hourly rate to $300 is appropriate.  See Latin Am. Music, 2020 WL 2848232, at *6 (noting that courts have found $200 to $450 reasonable for copyright associates); cf. Johnson v. Classic Materials NY, LLC, No. 19 Civ. 10529 (AJN), 2021 WL 1164089, at *6 (S.D.N.Y. Mar. 25, 2021) (finding reasonable hourly rate of $385 for eighth-year copyright associate).

Barton's website contains no biographical information regarding the two other associates, Sears and Lenane-Massey.  "To account for [Barton's] inadequate submissions, the Court reduces [their] hourly rates [] to the lower end of what might be deemed—based on the limited information [Barton] provide[d]—a reasonable range of rates." Capitol Records, 2022 WL 3348385, at *4.  The Court finds that an hourly rate of $200 "is reasonable as it is in line with the lower end of hourly rates for general associates in this District." Id.  Similarly, because Barton has not provided any information about the paralegals' experience, the Court reduces their hourly rate to $90, "which is the lower end of the range of paralegal fees in this District." Id. at *5.

The Court thus adopts as reasonable the following hourly rates:  $550 for Ross, $400 for Horgan, $300 for Chen, $200 for Sears and Lenane-Massey, and $90 for the paralegals.

### ii.    Hours Reasonably Expended

As the Court noted in L&M I and in the quantum meruit analysis above, the billing records Barton has submitted raise concerns about the nature and quantity of the hours expended. (See ECF Nos. 83; 90; § III.B.2.a.i–iii, supra).  L&M argues that Barton's Invoices contain improper block billing, numerous examples of excessive billing,[12] and over $3,000.00 in fees rendered after L&M terminated the firm.  (ECF No. 139-1 at 14–17).  Barton responds that its time entries contain adequate detail, the registration work was a prerequisite to filing this action, and McAvoy failed to object to any of the Invoices.  (ECF No. 141 at 7–10).

The Court is not required to "set forth item-by-item findings concerning what may be countless objections to individual billing items."  Lunday v. City of Albany, 42 F.3d 131, 134 (2d Cir. 1994).  The Court highlights, however, several areas in the Invoices that reflect improper or excessive billing.  First, while the Court accepts that securing copyright registrations for L&M's works was a prerequisite to filing the copyright infringement claims, see Reed Elsevier, Inc. v. Muchnick, 559 U.S. 154, 166 (2010), Barton fails to demonstrate the same as to L&M's trademark registrations.  In other words, the Court does not view the Settlement, which resolves L&M's Copyright Claims against Claire's, as representing any recovery concerning L&M's trademarks, and Barton has offered no explanation why it should.  Therefore, no lien for Barton's services for L&M's trademark registrations can attach to the Settlement Payment.  See Rosenblum, 121 A.D.2d at 546–47.  Similarly, Barton improperly seeks reimbursement for time spent on claims against entities that are not parties to this action, and on the meritless State Law Claims.  (See,

---

[12] The examples L&M highlights include Horgan's time entries for March 5, 2021, March 8, 2021, March 9, 2021, Ross's entries for March 5, 2021 and March 16, 2021, and Chen's entry for June 9, 2021.  (ECF No. 139-1 at 15–16 (citing ECF Nos. 136-4 at 20–22; 135-6 at 6, 20).

e.g., ECF No. 136-3 at 5, 7, 9, 12; 136-6 at 9; § III.B.2.a.i, supra).  Accordingly, Barton's time expended on trademark work and other matters not relating to the Copyright Claims in this action must be excluded, and a reduction is appropriate for undue time expended on meritless claims. See Webber, 2022 WL 2751874, at *10 (noting that attorney's time spent on non-copyright claims was not recoverable).

Second, the timekeepers regularly recorded time for internal Barton meetings, calls, and emails.  (See, e.g., ECF Nos. 136-3 at 9, 12, 16, 19, 22 (both Horgan and Ross billing for communications with each other)).  As this Court has previously noted, "due to 'corporate scrutiny of outside counsel fees and commonplace rules prohibiting billing for internal conferences, it is highly unlikely counsel would be able to bill a client for this quantity of internal conferences.'"  Greenburger v. Roundtree, No. 17 Civ. 3295 (PGG) (SLC), 2020 WL 6561598, at *13 (S.D.N.Y. Jan. 16, 2020) (quoting Williams v. Metro-N R.R. Co., No. 17 Civ. 03847 (JGK), 2018 WL 3370678, at *10 (S.D.N.Y. June 28, 2018)), adopted by, 2020 WL 4744640 (S.D.N.Y. Aug. 16, 2020); see Cooper v. Sunshine Recoveries, Inc., No. 00 Civ. 8898 (LTS) (JCF), 2001 WL 740765, at *3–4 (S.D.N.Y. June 27, 2001) (applying reduction for excessive interoffice communications). Courts have applied reductions of up to 75% for such excessive interoffice communications.  See Williams, 2018 WL 3370678, at *10.

Third, L&M is correct that the Invoices reflect block billing, i.e., composite entries that do not allocate how much time was spent on individual tasks. (ECF No. 139-1 at 15–17).  While block billing is "disfavored," it "does not automatically preclude recovery for the hours billed by counsel."  Benihana, Inc. v. Benihana of Tokyo, LLC, No. 15 Civ. 7428 (PAE), 2017 WL 6551198, at *3 (S.D.N.Y. Dec. 22, 2017).  Reductions are appropriate, however, "when (1) there is reason to

believe that the hours billed were independently unreasonable; (2) the block billing involved aggregating tasks that were not all compensable; or (3) the number of hours block billed together was so high (such as five hours or more) so as to create an unacceptable risk that the aggregated total exceeded the reasonable hours worked on compensable tasks." Id.  Here, the Invoices give rise to each of these concerns.  For example, on July 14, 2021, Ross billed 5.2 hours described as "Review section 349 cases; prepare for and conduct mediation."  (ECF No. 136-6 at 9).  The same day, Horgan recorded 4.0 for attending the mediation, sending emails, and communicating with other Barton attorneys.  (Id.)  While the time expended for the mediation is compensable, the time spent on the State Law Claims and interoffice communications should be reduced, if not eliminated, but because these descriptions are composite, the Court cannot discern how much of the attorneys' time is reasonably compensable.   There are also numerous examples of composite entries of five hours or more, increasing the risk that the aggregated total was greater than reasonable.  (See, e.g., ECF Nos. 136-4 at 3 (10/26/20 entry for 6.5 hours); id. at 20 (03/02/21 entry for 5.0 hours); id. at 21 (03/04/21 entry for 6.5 hours); id. at 22 (03/08/21 entry for 5.5 hours); 136-5 at 22 (06/16/21 entry for 5.5 hours); 136-6 at 9 (07/15/21 entry for 6.0 hours); 136-7 at 3 (08/05/21 entry for 6.2 hours)).

Taking each of problematic billing issues reflected on the Invoices into account, the Court elects to make an across-the-board percentage reduction in hours to arrive at the reasonable hours Barton in fact expended on representing L&M with respect to the claims in this action.  Courts, exercising their discretion to make across-the-board reductions to arrive at the reasonable number of hours expended, have applied percentage reductions of up to 75% to address overbilling issues depending on the specifics of the case.  See Top Jet, 2022 WL 1184245,

at *5–6 (applying 75% reduction in hours and noting cases applying percentages up to 50%); McDermott v. NYFirestore.com, Inc., No. 18 Civ. 10853 (AJN) (SLC), 2021 WL 952455, at *5–6 (S.D.N.Y. Jan. 15, 2021) (applying 40% reduction to hours and collecting cases applying reductions of 15–50%), adopted by, 2021 WL 950507 (S.D.N.Y. Mar. 12, 2021).

Similar to the circumstances in Top Jet, the Court has detailed numerous examples of excessive or improper billing, and Barton has failed to provide substantial justification for its hours, "failed to provide complete information on the experience of the attorneys, and forced the Court to weed through" more than 100 pages of billing records to resolve a fee dispute that is delaying the parties from securing a final resolution of this action. 2022 WL 1184245, at *5. Accordingly, the Court finds that a 75% reduction in Barton's hours is appropriate for purposes of calculating the charging lien. In addition, the Court has excluded from its tabulation of hours those that Barton expended on and after August 9, 2021, when L&M terminated the representation. (See ECF No. 136-7 at 3–4). See also Chen, 2020 WL 10574176, at *12 (deducting hours incurred after termination); Antonmarchi, 678 F. Supp. 2d at 241 (explaining that charging lien should reflect "the reasonable value of the legal services rendered up to the date of counsel's withdrawal or discharge") (internal citation omitted).

Using the reasonable hourly rates determined above, the Court applies this reductions as follows:

| Timekeeper | Requested Rate | Awarded Rate | Requested Hours[13] | Hours Reduced by 75% | Total |
|---|---|---|---|---|---|
| M. Ross | $550 | $550 | 88.9 | 22.225 | $12,223.75 |

---

[13] As noted, Barton has not provided the total number of hours each timekeeper expended, so the Court tried to discern these totals through a page-by-page review of the Invoices.

| | | | | |
|---|---|---|---|---:|
| L-M. Horgan | $400 | $400 | 250.5 | 62.625 | $25,050.00 |
| S. Sears | $450 | $200 | 3.7 | 0.925 | $185.00 |
| A.Y. Chen | $375 | $300 | 27.8 | 6.95 | $2,085.00 |
| R. Lenane-Massey | $395 | $200 | 2.7 | 0.675 | $135.00 |
| Paralegals | $100 | $90 | 43 | 10.75 | $967.50 |
| **TOTAL** | | | | | **$40,646.25** |

Accordingly, the Court determines that Barton is entitled to a Charging Lien against the Settlement Payment in the amount of $40,646.25.

### IV.  CONCLUSION

For the reasons set forth above, the Settlement Motion is GRANTED and the Fee Motion is GRANTED IN PART and DENIED IN PART, to the extent that Barton is granted a Charging Lien against the Settlement Payment in the amount of $40,646.25.  By **Tuesday, October 25, 2022**, L&M and Claire's shall submit a proposed form of final judgment for the Court's review.

L&M is directed to serve a copy of this Opinion and Order on Barton and file proof of service on the docket by **Tuesday, October 11, 2022**.

The Clerk of the Court is respectfully directed to close ECF Nos. 131 and 136.

Dated:      New York, New York                     SO ORDERED.
            October 5, 2022

SARAH L. CAVE
United States Magistrate Judge